UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SIX L'S PACKING COMPANY, INC.,** a
Florida corporation,

      Plaintiff,

v.                                                Case No. 8:05-CIV-2098-T-17-EAJ

**GOODNIGHT INTERNATIONAL,
INC.,** a Nevada corporation; and **MARY
JANE MACKEY,** individually; **GARY
MACKEY,** individually; **TERRANCE N.
TAYLOR,** individually; **FRANKLIN C.
JOHNSON,** individually; and **GERALD
MCCOLLOUGH,** individually,

      Defendants.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court on Plaintiff's, Six L's Packing Company, Inc.'s, Motion for Summary Judgment filed September 20, 2006 (Dkt. 32), Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment filed September 20, 2006 (Dkt. 33), and Defendants', Goodnight International, Inc., Mary Jane Mackey, Gary Mackey, Terrance N. Taylor, Franklin C. Johnson, and Gerald McCullough's, Response and Incorporated Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment filed October 4, 2006 (Dkt. 35). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

On November 14, 2005, Plaintiff, Six L's Packing Company, Inc. ("Plaintiff"), a Florida corporation, filed this action against Defendants, Goodnight International, Inc. ("Goodnight"), a Nevada corporation, and Mary Jane Mackey, Gary Mackey, Terrance N. Taylor, Franklin C.

1

Johnson, and Gerald McCollough, each in their individual capacity, to enforce its rights against the Defendants as an unpaid trust beneficiary of the express statutory trust provided under § 499e(c) of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, *et seq.* (Goodnight and the individual defendants are collectively referred to herein as the "Defendants"). (Dkt. 1).  Defendants answered the complaint and asserted several affirmative defenses on December 6, 2005. (Dkt. 21).  Plaintiff moved for summary judgment and filed a memorandum in support of its motion on September 20, 2006. (Dkt. 32, 33).  Defendants filed a Response and Incorporated Memorandum of Law in opposition to Plaintiff's motion on October 4, 2006. (Dkt. 35).  The following are found to be "facts" for purposes of resolving the motion for summary judgment.

      Plaintiff operates its business in Immokalee, Florida under a valid PACA license issued by the United States Department of Agriculture as a seller of wholesale quantities of perishable agricultural commodities ("produce") in interstate commerce as authorized by § 499c of PACA . Defendant Goodnight buys wholesale quantities of produce as a purchaser or  "dealer" of produce as defined by PACA.[1]   Mary Jane Mackey, Gary Mackey, Terrance N. Taylor, Franklin C. Johnson, and Gerald McCullough are the officers and shareholders of Goodnight. Mr. Mackey, Ms. Mackey, and Mr. Johnson are responsible for Goodnight's day-to-day operations.  Mr. Taylor's and Mr. McCullough's levels of involvement with Goodnight's operations are in dispute.

      Between July 8, 2005 and August 5, 2005, Plaintiff sold and delivered five shipments of produce, specifically tomatoes, to Goodnight invoiced at $66,142.99.  Each of these shipments were sent Free on Board ("F.O.B.").  Evan Gusar, an employee of Plaintiff, was the primary salesperson responsible for corresponding with Defendants regarding the type, quantity, and price of each produce sale.  Mr. Mackey, individual Defendant and Principal of Goodnight, inspected and accepted each delivery of produce from Plaintiff and was the main point of contact for Plaintiff.  While the underlying and proceeding facts are in dispute, it is undisputed that upon delivery of one of these shipments, Mr. Mackey was dissatisfied with the produce he received

---

[1] PACA defines "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities...any perishable agricultural commodity." 7 U.S.C. § 499a(b)(6). PACA further defines "person" to include "individuals, partnerships, corporations, and associations." *Id.*at § 499a(b)(1).

and requested a price adjustment from Mr. Gusar.  However, Defendants did not procure an USDA inspection of any of the five loads of produce; as such, there is no independent inspection of the tomatoes on record.

While the specific dates of receipt are likewise in dispute, Plaintiff mailed to Goodnight, and Goodnight received, five invoices for each of the transactions in dispute.  None of the invoices contained any price adjustment.  Plaintiff's invoices included the trust preservation language required in accordance with the PACA Amendments of 1995.[2]  The five invoices were dated July 18, July 29, August 3, August 10, and August 12, 2005.  Goodnight did not pay for any of the five deliveries of produce.

As a result of Goodnight's failure to pay, Plaintiff initiated this action.  The claims include allegations that PACA applied, that pursuant to 7 U.S.C. § 499e a statutory trust was created in favor of Plaintiff, that Defendants failed to preserve sufficient funds in PACA Trust Assets, and that Defendants, therefore, were in violation of PACA, as well as in breach of contract and breach of their fiduciary duties to Plaintiff as a PACA Trust Beneficiary. (Dkt. 1). In their Answer, Defendants admitted that PACA applies, that Goodnight purchased the goods as alleged in the Complaint, and that Goodnight has not tendered payment for said goods. (Dkt. 21). Defendants asserted in their answer several affirmative defenses, including a claim for fraudulent inducement.  Upon Plaintiff's application, this Court issued a Temporary Restraining Order on November 16, 2005, which enjoined Defendants, their agents, officers, assigns, and any of their banking institutions from using, consuming or otherwise dissipating assets impressed with an expressed statutory trust pursuant to § 499e(c)(3) of PACA, or making payment of any PACA trust asset to any creditor, person, or entity until further order of this Court or until the Defendants paid the sum of $66,142.99 to Plaintiff. (Dkt. 8).  This Court found that Defendants had either dissipated the PACA trust or had presented sufficient threat of dissipation of such trust to warrant such an order. *Id.*  Defendants immediately deposited sufficient funds into an escrow account in compliance with the order.  As a result, this Court issued an order dissolving the temporary restraining order on November 23, 2005. (Dkt. 14).

---

[2] See discussion on PACA notification requirements *infra* at p.7.

3

**STANDARD OF REVIEW**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**DISCUSSION**

**I. The Perishable Agricultural Commodities Act**

In 1930, Congress enacted PACA to regulate trading in perishable agricultural products with the purpose of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." *Farley and Calfee, Inc. v. United States Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991). PACA was enacted to "suppress unfair and fraudulent business practices" and "provide for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983)., *reprinted in* 1984 U.S.C.C.A.N. 405, 406. PACA requires licensing of all parties qualifying as commission merchants, dealers, and brokers in perishable agricultural commodities, and provides various remedies that can be enforced either through a complaint filed with the Secretary of Agriculture or through an action in any court of competent jurisdiction. 7 U.S.C. § 499e(b); *see also Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). In effect, PACA requires that dealers make prompt and full payment for their produce purchases. 7 U.S.C.

§ 499b(4).[3]  In 1984, as a response to the large number of defaults and fraudulent rejection of produce by some dealers, Congress amended PACA by adding section 499e(c)(2), which provides additional protection for the sellers of fruits and vegetables.  Pub.L. No. 28-273, 98 Stat. 165 (1984); *see also Endico Potatoes, Inc. v. Cit Group/Factoring,* Inc., 67 F.3d 1063, 1067 (2d Cir. 1995).  Under this provision, the agricultural commodities, products derived from the produce, and proceeds from the sale of such items are subject to a statutory trust ("PACA Trust") for the benefit of the seller until full payment is made to the seller by the dealer.  7 U.S.C. § 499e(c)(2); *see also Sunkist Growers,* 103 F.3d at 282.  PACA § 499e(c)(2) specifically provides that:

> (2)  Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association, as defined in section 1141j(a) of Title 12, and its members.  7 U.S.C. at § 499e(c)(2).

This provision thus creates a "PACA Trust" which is a "non-segregated floating trust" on the

---

[3] § 499b(4) states that it shall be unlawful:
> (4) For any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold, or contracted to be bought, sold, or consigned, in such commerce by such dealer, or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under section 499e(c) of this title. However, this paragraph shall not be considered to make the good faith offer, solicitation, payment, or receipt of collateral fees and expenses, in and of itself, unlawful under this chapter.

5

produce and their derivatives. 7 C.F.R. § 46.46(c); *see also Endico Potatoes*, 67 F.3d at 1067. The PACA Trust provides a manner in which the sellers of the produce "maintain a right to recover against the purchasers superior to all creditors including secured creditors." *Id*.; *see* 7 U.S.C. § 499e(c)(1). Courts have consistently and unanimously held that the PACA Trust is governed by general trust principles. *See Endico Potatoes*, 67 F.3d at 1067.

**A. Preservation of PACA Trust Rights**

PACA has strict requirements for a seller to preserve its statutory trust rights. The Act specifies that the unpaid seller will lose all benefits of the trust unless:

> [s]uch person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction. 7 U.S.C. at § 499e(c)(3).

PACA therefore requires that the unpaid seller of produce must serve this "Trust Notice" on the dealer within thirty (30) days of the payment due date. *Id.* Plaintiff asserts that it has properly met the notice requirement of PACA, while Defendants assert that the Plaintiffs failed to provide proper notice and, therefore, failed to preserve their interest in the statutory trust.

The Department of Agriculture's regulations related to PACA detail the notification requirements a seller must conform to in order to perfect an interest in PACA trust receipts.[4] 7

---

[4] The rule provides in relevant part:
(1) Notice of intent to preserve benefits under the trust must be in writing, must include the statement that it is a notice of intent to preserve trust benefits and must include information which establishes for each shipment:
(i) The names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable

C.F.R. § 46.46(f). PACA and the relevant regulations further state that sellers may use their invoice to fulfill the notice requirement to preserve trust benefits as long as it includes the specific statement provided for in the regulations.[5] Defendants do not challenge the content of the Trust Notice. Plaintiff has provided copies of each invoice sent to Defendants and they clearly meet the statutory and regulatory standards as to the content of the Trust Notice.

Defendants do, however, challenge Plaintiff's assertion that the notices were sent pursuant to the time requirements set out by PACA and the regulations. As provided above, PACA requires that the seller give notice to the dealer within thirty (30) days of "the time prescribed by which payment must be made." 7 U.S.C. § 499e(3). The Department of Agriculture defines the "time prescribed by which payment must be made" for parties, such as these, who have not reduced their agreement "to writing before entering into the transaction" as ten (10) days after the buyer has accepted the shipment of produce. 7 C.F.R. § 46.2(aa)(5). Thus, an unpaid seller essentially has forty (40) days from the date of receipt of the produce to provide timely notice to the dealer. Regular mailing meets the requirements of this rule. *See In re East Coast Brokers and Packers, Inc.,* 961 F.2d 1543 (11th Cir. 1992).

Plaintiff argues that notice is fulfilled through regular proper mailing and that the presumption of properly mailed documents is accepted by both the Florida and United States Supreme Court. This Court agrees with Plaintiff on the presumption of properly mailed documents. *See In re East Coast Brokers and Packers, Inc.*, 961 F.2d at 1545 (11th Cir. 1992); *see also, Hagner v. U.S.*, 285 U.S. 427 (1932). There is no question that the presumption exists and may be utilized in this case. In order to raise the presumption of receipt, Plaintiff must establish that the notices were properly mailed. Mr. Peter Dessak, Plaintiff's Chief Collections Officer, stated in his affidavit that he personally addressed, stamped, and mailed the each of the

---

(ii) The date of the transaction, commodity, invoice price, and terms of payment (if appropriate),
(iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate), and
(iv) The amount past due and unpaid. 7 C.F.R. § 46.46(f).

[5] 7 U.S.C. § 499e(c)(4). 7 C.F.R. § 46.46(f)(3)(i) also requires that invoices provide the following statement: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

invoices on the day of transaction via U.S. Mail by deposition of the invoices in the U.S. Mail depository located in Immokalee, Florida. The Court finds that this is sufficient to raise the presumption of receipt. *See In re East Coast Brokers and Packers, Inc.*, 961 F.2d at 1545. However, the Defendants correctly argue that the presumption of receipt is a rebuttable one and dispute the date of receipt. Defendants state that they did not receive the invoices until possibly 45 days after the shipments were delivered, and Mr. Mackey, in his deposition, states that it may have been up to 60 days after delivery. As such, the Court finds that there is an issue of material fact as to whether Defendants received proper notice of Plaintiff's intent to preserve their trust rights.

**B. Dealer Corporation's Liability as Trustee of Statutory Trust and the Personal Liability of Principals**

By enacting 7 U.S.C. § 499e(c) Congress designated unpaid sellers of produce beneficiaries of statutory trusts. *Red's Market v. Cape Canaveral Cruise* Line, Inc., 181 F.Supp. 2d 1339, 1343 (11th Cir. 2002). PACA holds "dealers" liable as trustees of the PACA Trust; as noted above, "dealers" include corporations engaged in the business of buying in wholesale produce. 7 U.S.C. § 499a(6). Numerous decisions have addressed the issue of the corporate trustee's liability and have unanimously held both the company and its controlling officers liable to the unpaid supplier of produce. *See Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346 (S.D.N.Y. 1993) (holding in part that "a PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier."); *see also*, *Sunkist Growers,* 104 F.3d at 282. In each of these and many other cases, when a court was faced with a company which failed to preserve the PACA trust assets in sufficient amount to satisfy the claims of its seller, the company has been held liable to the unpaid seller.

Because the failure of corporate dealers to pay for produce is most often due to the corporation's inability to pay, employees and officers of corporate dealers who are in a position to control trust assets may also be considered trustees under PACA. *Sunkist Growers*, 104 F.3d at 282-83; *see also Golman-Hayden Co. v. Fresh Source Produce*, 217 F.3d 348, 351 (5th Cir. 2000) ("Thus we join our colleagues in the Ninth Circuit and hold that individual shareholders,

officers or directors of a corporation who are in a position to control trust assets and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA"). The extension of liability to those in control of the trust assets is reasonable and necessary in order to enforce the goals of Congress in establishing the statutory trust.

There is a significant issue as to who are the principals in this case. Each of the individual Defendants admit that they are officers and shareholders of Goodnight. Plaintiff argues that each of these individual Defendants were in positions of control over the PACA trust assets at issue here, and that they were responsible for all aspects of Goodnight's business, including directing payment of Goodnight's creditors, and should, therefore, be subject to liability under PACA. Defendants admit that Mr. Mackey, Ms. Mackey, and Mr. Johnson were in control of the day-to-day operations of Goodnight, and are, therefore, principals with control over PACA trust assets. However, Defendants, with the support of Mr. Mackey's deposition, state that Mr. Terrance Taylor and Mr. Gerald McCollough are officers of the company in title only, and have no involvement in or control over the day-to-day operations of Goodnight, including its financial affairs or its PACA trust assets. Determining who the principals are is essential to the assignment of liability. As such, the Court finds that there is certainly an issue of material fact as to whether Mr. Taylor and Mr. McCollough were in a position to control the trust assets at all times relevant to the action.

**C. Defendants' Affirmative Defense and Claim Regarding the Non-Conformity of Produce**

Defendants raise several affirmative defenses in their answer.[6] At issue here are their arguments that Plaintiff breached the contract by delivering non-conforming goods and that Defendants were fraudulently induced by Plaintiff, specifically Plaintiff's employee Mr. Gusar, to accept the produce. Most significant to these claims is that both parties agree that the shipments were all made F.O.B. or "Free on Board." The Department of Agriculture describes F.O.B. as transactions in which "the produce quoted or sold is to be placed free on board, at shipping point, in 'suitable shipping condition,' and the buyer assumes all risk of damage and

---

[6]Plaintiff also argues that Defendants failed to raise untimely notice as an affirmative defense in their answer. Although the Court will not address this issue further, Plaintiff is incorrect; Defendants' Answer and Affirmative Defenses clearly state Defendants' defense that Plaintiff waived any PACA trust rights because they failed to provide timely notice to Defendants. (Dkt. 21).

9

delay in transit not caused by the seller. 7 C.F.R. § 46.43(i); *see also*, *California Gruit Exchange v. Henry*, 89 F. Supp. 580, 586 (W.D. Penn. 1950) (stating that "title and risk pass to the buyer at the point of shipment under a sale...if the goods met the contract requirements at the point of shipment, any normal deterioration losses which arose in transit would fall upon the buyer"). Furthermore, "suitable shipping condition" is defined in relevant part, as meaning, "that the commodity, at time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the contract destination agreed upon between the parties." 7 C.F.R. § 46.43(j).

Defendants' claim that the produce was non-conforming is essentially a claim for the breach of the warranty of suitable shipping conditions. In order for Defendants to prove such a breach, Defendants must first prove normal transportation. *See Id.; see also, Ocean Breeze Export, Inc. v. Rialto Distributing*, 60 Agric. Dec. 840 (2001); *see also, Mecca Farms, Inc. v. Bianchi Pre-Pack, Inc.*, 50 Agric. Dec. 1929 (1991) (finding that "the burden of proving that transportation services and conditions were normal falls upon the buyer where a shipment is accepted"). Defendants provide no evidence of normal shipping conditions. Defendants admit that they do not have temperature recordings for any of the shipments and did not have any Department of Agriculture inspections. The only evidence brought by Defendants is Mr. Mackey's evaluation of the produce as they appeared to him upon his receiving them and ultimately accepting them. Therefore, this Court agrees with Plaintiff that Defendants' affirmative defense regarding non-conformity fails.

Defendants' second affirmative defense at issue is that of fraudulent inducement.[7] Within the context of PACA, Defendants are correct in their statement that fraudulent conduct by a seller of produce is sufficient grounds for the purchaser to escape liability and avoid a contract

---

[7]Plaintiffs argue that Defendants' fraudulent inducement claim was improperly pled as an affirmative defense and should have been pled as a counterclaim. This Court recognizes the principle as cited by Plaintiffs that "fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from breach of contract." *HTP, Ltd. v. Lineas Areas Costaricenses, S.A.*, 21 Fla. L. Weekly S447 (Fla. Oct. 1996). However, it is well-established under Rule 8(c) of the Federal Rules of Civil Procedure that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." This Court finds the Defendants labeling their fraudulent inducement claim as an affirmative defense was simply an error of description, but was otherwise properly pled.

10

induced by fraud. *See Joseph Martinelli and Co. v. Simon Siegel Co.*, 176 F.2d 98 (1st Cir. 1949), 1949 U.S. App. LEXIS 3022. This principle is also stated in PACA which makes it unlawful for "any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity..." 7 U.S.C. § 499b(4). In *Martinelli*, the court found that a purchaser of produce on an "acceptance final basis" was entitled under PACA to avoid a contract that the buyer was fraudulently induced into entering by rejecting the produce. 176 F.2d at *9. However, this case is clearly distinguishable from *Martinelli*. In *Martinelli*, the buyers were able to demonstrate that the goods were non-conforming, and were thus benefited by the warranty of suitable shipping conditions. *Id.* Further, the court made clear that the buyers in *Martinelli* had the right to refuse the goods due to the fraudulent inducement. In the instant case, however, Defendants accepted the shipments despite their concerns with the produce. By accepting the shipment, Defendants committed themselves to full payment of the produce pursuant to PACA. 7 U.S.C. § 499e.

The issue of whether the price of the goods was open or not was not properly raised by either party, but seems to be a rather important issue in this case. While PACA does not directly address this issue, the Universal Commercial Code ("UCC") allows for open pricing on contracts for the sale of goods. Fla. Stat. § 672.305. Plaintiff's deny that there were ever any price adjustments made on the contracts, while Defendants assert that they relied on price adjustments in their acceptance of the produce. Neither party sufficiently answers the question of how the prices were to be established in this contract. However, the UCC, as adopted by the Florida legislature, is clear that failure to agree to a price term does not void a contract. *Id.* at § 672.204(3). Such open terms, including price, would not cause the contract to fail for indefiniteness, and the buyer would still be bound to the fulfillment of the contract. *See Bornstein v. Somerson*, 341 So. 2d 1043, 1047 (Fla. 2d. DCA 1977).

Primarily due to the disputed facts as to the timeliness of the Trust notice and the identification of principals who controlled trust assets, this court has found sufficient issue of material fact as to cause Plaintiff's motion for summary judgment to fail. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 32) be **DENIED**.

11

**DONE AND ORDERED** in Chambers in Tampa, Florida, this <u>13</u>th day of March 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record